JM UC Group, LLC v Precious Care Mgt., LLC (2023 NY Slip Op 06034)

JM UC Group, LLC v Precious Care Mgt., LLC

2023 NY Slip Op 06034

Decided on November 22, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 22, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
VALERIE BRATHWAITE NELSON
JOSEPH J. MALTESE
LINDA CHRISTOPHER, JJ.

2021-08709
 (Index No. 522369/19)

[*1]JM UC Group, LLC, etc., respondent, 
v
Precious Care Management, LLC, et al., appellants.

Pollock Cohen LLP, New York, NY (Adam Pollock, Benjamin D. Battles, and Meister Seelig & Fein LLP [Jeffrey Schreiber and Kevin Fritz], of counsel), for appellants.
Abrams Fensterman, LLP, White Plains, NY (Robert A. Spolzino, Lisa Colosi Florio, and Aaron Zucker of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract and for declaratory relief, the defendants appeal from an order of the Supreme Court, Kings County (Lillian Wan, J.), dated September 3, 2021. The order, insofar as appealed from, denied those branches of the defendants' motion which were pursuant to CPLR 3211(a) to dismiss the first through fourth, sixth, and eighth through thirteenth causes of action.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying those branches of the defendants' motion which were pursuant to CPLR 3211(a) to dismiss the first, third, fourth, sixth, and eighth through thirteenth causes of action, and substituting therefor a provision granting those branches of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the defendants.
In 2016, Precious Care Management, LLC (hereinafter Precious Care), and JM UC Group, LLC (hereinafter JM), formed UMUC Management Monsey, LLC (hereinafter UMUC), to manage an urgent care facility in Monsey. JM and Precious Care each owned a 50% membership interest in UMUC.
After a dispute arose between JM and Precious Care regarding the management of UMUC, on October 10, 2018, JM and Precious Care entered into a membership interest purchase agreement (hereinafter the MIPA), which, among other things, provided the terms and conditions under which JM was obligated to purchase Precious Care's interest in UMUC. The MIPA contained releases whereby, among other things, JM agreed that it "irrevocably and unconditionally release[d] and forever discharge[d]" Precious Care and "its affiliates, agents, representatives, successors and assigns" "from any and all" claims, which JM or its "affiliates, agents, representatives, successors and assigns" "may now own, hold or suspect, have at any time heretofore owned, held or suspected, or may at any time prior to [a date defined in the MIPA] own, hold or suspect with respect to [UMUC]." The releases were intended to "bar . . . all liabilities, claims, demands, obligations, damages, actions, causes of action, or suits of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, arising based on facts or circumstances [*2]occurring through" the date of the MIPA. However, the releases in the MIPA did "not apply to or waive or discharge in any way any claims arising under [the MIPA]."
JM, individually and derivatively on behalf of UMUC, subsequently commenced this action against, among others, Precious Care, inter alia, to recover damages for breach of UMUC's operating agreement and the MIPA, and for declaratory relief. Thereafter, the defendants moved, among other things, pursuant to CPLR 3211(a) to dismiss the first through fourth, sixth, and eighth through thirteenth causes of action. The Supreme Court denied those branches of the motion, and the defendants appeal.
"Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [internal quotation marks omitted]). "If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties" (id. at 276 [internal quotation marks omitted]). "Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made" (id. [internal quotation marks omitted]).
"A release should never be converted into a starting point for . . . litigation except under circumstances and under rules which would render any other result a grave injustice" (id. [internal quotation marks omitted]). "A release may be invalidated, however, for any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake" (id. [internal quotation marks omitted]). "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release" (id. [internal quotation marks omitted]). "A plaintiff seeking to invalidate a release due to fraudulent inducement must establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury" (id. [internal quotation marks omitted]). "[A] party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release" (id.).
Here, the defendants correctly contend that the first, third, fourth, sixth, and eighth through thirteenth causes of action were barred by the broad release in the MIPA (see id.). Contrary to the plaintiff's contention, it failed to sufficiently allege that the release had been procured by fraud (see id.; Miller v Brunner, 215 AD3d 952).
However, the Supreme Court properly denied that branch of the defendants' motion which was to dismiss the second cause of action, alleging breach of the MIPA. "On a motion to dismiss pursuant to CPLR 3211(a)(7) for failure to state a cause of action, the pleading is afforded a liberal construction, the facts as alleged are accepted as true, and the plaintiffs are accorded the benefit of every possible favorable inference" (Singh v City of New York, 189 AD3d 1697, 1699). "'Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss'" (Bianco v Law Offs. of Yuri Prakhin, 189 AD3d 1326, 1329, quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19).
"The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach" (Magee-Boyle v Reliastar Life Ins. Co. of N.Y., 173 AD3d 1157, 1159 [internal quotation marks omitted]). Applying these principles here, within its four corners, the second cause of action sufficiently alleged the elements of a breach of contract cause of action necessary to survive a motion to dismiss pursuant to CPLR 3211(a)(7) (see Magee-Boyle v Reliastar Life Ins. Co. of N.Y., 173 AD3d at 1159).
In light of the foregoing, we need not reach the parties' remaining contentions.
CONNOLLY, J.P., BRATHWAITE NELSON, MALTESE and CHRISTOPHER, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court